# 98 DTA 208

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

SUCESION GILBERTO ALVAREZ CRESPO, COMPUESTA POR GILBERTO ALVAREZ CANDELARIO, ZENAIDA ALVAREZ CANDELARIO, DOROTHY ALVAREZ FERRER, GILBERTO EDUARDO ALVAREZ FERRER Y LA LCDA. DOROTHY FERRER DEL VALLE
Apelantes

v.

HON. PEDRO PIERLUISI, SECRETARIO DE JUSTICIA
DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
Apelado

Núm. KLAN-98-00528

San Juan, Puerto Rico, a 17 de agosto de 1998

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Giménez Muñoz y Miranda De Hostos

Alfonso de Cumpiano, Juez Ponente

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## TEXTO COMPLETO DE LA SENTENCIA

La controversia en este caso se circunscribe a determinar si el tribunal está impedido de reconocer a los herederos de un funcionario público que falleció en su empleo el derecho de éste al importe de la licencia por enfermedad acumulada, porque la ley expresamente no establece la transmisibilidad de ese derecho a los herederos. El tribunal de instancia resolvió que no tenía autoridad en ley para ordenar ese pago a los herederos A nuestro juicio erró; procede revocar.

### I

Los hechos en que se basa el caso son claros y no son objeto de discusión. El Lcdo. Gilberto Alvarez Crespo falleció el 1ro. de mayo de 1995, cuando se desempeñaba como fiscal auxiliar del Tribunal Superior. Llevaba trabajando en el servicio público más de diez (10) años, específicamente veintiocho (28) años, y al momento de su muerte tenía acumulados ochenta y dos (82) días de licencia por enfermedad. Conforme su sueldo, el importe de esta licencia ascendía a la cantidad de $17,739 35.

El Departamento de Justicia (el Departamento) pagó a los herederos del licenciado Alvarez Crespo la suma acumulada por éste en concepto de licencia por vacaciones. Los herederos reclamaron la suma acumulada por su causante en concepto de licencia por enfermedad. El Departamento denegó dicho pago bajo el fundamento que ni la Ley de Personal, ni su Reglamento, contemplaban el pago de la licencia por enfermedad acumulada por un empleado a la fecha de su muerte.

Inconformes, los herederos presentaron acción de sentencia declaratoria ante el tribunal de instancia, en solicitud de que se decretara que les asistía el derecho de recobrar el importe de la licencia por enfermedad acumulada por el licenciado Alvarez Crespo. El tribunal declaró sin lugar la demanda. Interpretó que la ley excluia dicho pago a los herederos, por lo que determinó que el tribunal carecía de autoridad legal para ordenar su pago.

Los herederos nos plantean que incidió el tribunal al determinar que carecía de autoridad en ley para ordenar el pago, al determinar que es inaplicable al caso la doctrina de enriquecimiento injusto, al resolver que la ley no establece una distinción irracional, injustificada e inequitativa.

### II

Lo referente a los pagos globales de vacaciones y licencias por enfermedad a empleados del Estado Libre Asociado a su separación del servicio público, se encuentra regulado en el artículo 2 de la Ley Núm. 125 de 10 de junio de 1967, según enmendada, 3 L.P.R.A. sec. 703(a), que provee:

*"Todo funcionario o empleado del Estado Libre Asociado de Puerto Rico, excepto los funcionarios de la Rama Ejecutiva nombrados por el Gobernador y los de instrumentalidades y corporaciones públicas, tendrá derecho a que se le pague y se le pagará una suma global de dinero por la licencia de vacaciones que tuviere acumulada hasta un máximo de sesenta (60) días laborables a su separación del servicio por cualquier causa, y por la licencia por enfermedad que tuviere acumulada, hasta un máximo de noventa (90) días laborables a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno, y si no lo fuere, a su separación definitiva del servicio si ha prestado, por lo menos, diez (10) años de servicio. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado estuviere devengando al momento de su separación e independientemente de los días que hubiere disfrutado de estas licencias durante el año. Las disposiciones de esta sección son aplicables*

*a los fiscales, procuradores y registradores de la propiedad.*

*Se faculta a los funcionarios nominadores para autorizar tal pago.*

*Al cesar la prestación de servicios, el puesto que venía desempeñando el funcionario o empleado se considerará vacante y no se considerará como tiempo servido el período posterior a la fecha en que cesó la prestación de servicios, equivalente en tiempo de licencia a dicho pago final.*

*Si la separación del servicio fuere motivada por la muerte del funcionario o empleado, se les pagará a sus beneficiarios la suma que hubiere correspondido a éste, por razón de la licencia de vacaciones no utilizada, conforme se dispone en esta sección."*

Conforme surge de dicha disposición y de la Ley Núm. 141 de 30 de junio de 1966, según enmendada, 3 L.P.R.A. sec. 133 b-1 (Supl. 1997), a los fiscales del Departamento de Justicia se le liquidarán las licencias acumuladas según provisto en el artículo 2, *supra.* Por otra parte, respecto a otros funcionarios nombrados por el Gobernador, rige el artículo 3 de la Ley Núm. 125, que dispone que el *"Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del pago de compensación final, incluyendo el pago a los beneficiarios en caso de muerte...".* Esta compensación final puede ascender hasta el equivalente a seis (6) meses de sueldo. 3 L.P.R.A. sec. 703b.

Previo a 1990, la liquidación de las licencias a los fiscales se efectuaba a manera de la compensación final dispuesta bajo el artículo 3, *supra.* Al cesar éstos en sus cargos, por cualquier causa incluyendo la muerte, el Gobernador podía tomar en cuenta al fijar la compensación final de los fiscales y de sus herederos, entre otros factores, las licencias por enfermedad que tenían acumuladas los fiscales. Artículo 4A del Boletín Administrativo Núm. 5288A de 22 de febrero de 1989. ■

Mediante la Ley Núm. 40 de 13 de diciembre de 1990, enmendatoria de la Ley Núm. 141, *supra*, se tuvo como propósito reconocerles el derecho al pago global de las licencias de vacaciones y de enfermedad a los fiscales de la manera dispuesta para los otros empleados del Departamento de Justicia, ya que previo a esta enmienda el Departamento de Justicia había interpretado administrativamente que el pago de licencias acumuladas por los fiscales, por ser funcionarios nombrados por el Gobernador, tenía que regirse por el artículo 3 de la Ley Núm. 125. ■

Así, pues, a la fecha de su muerte, en virtud de lo dispuesto en el artículo 2 de la Ley Núm. 125 antes transcrito, el licenciado Alvarez Crespo tenía derecho, a su separación del servicio público por cualquier causa, al pago global de la licencia por vacaciones acumuladas hasta sesenta (60) días laborables. En cuanto a la licencia por enfermedad acumulada tenía derecho a su pago global, hasta un máximo de noventa (90) días laborables, bajo dos supuestos:

*"(1) a su separación del servicio para acogerse a la jubilación bajo algún sistema de retiro gubernamental del que fuera participante; o*

*(2) si no fuere participante, a su separación definitiva del servicio si había prestado, por lo menos, diez (10) años de servicios."*

Aunque el licenciado Alvarez Crespo era participante del sistema de retiro gubernamental, no le aplicaba el primer supuesto en este caso, en atención a que falleció en servicio activo y no se separó del servicio para acogerse a la jubilación.

Le aplicaba el segundo supuesto. Al fallecer, dejó de ser participante, se separó definitivamente del servicio público, habiendo prestado en éste más de diez (10) años y le correspondían los derechos adquiridos por los empleados públicos que se separan definitivamente del servicio sin acogerse a la jubilación, esto es, derecho al reembolso de las aportaciones al sistema de retiro gubernamental y derecho al pago global por liquidación de las licencias acumuladas por vacaciones y enfermedad, conforme los términos antes señalados.

Esos derechos adquiridos no pudieron ser disfrutados por el licenciado Alvarez Crespo, por su

fallecimiento. Su sucesión los reclamó, habiéndosele denegado el pago de la licencia por enfermedad, bajo la interpretación de ley efectuada por el Departamento y avalada por el tribunal, consistente en que la ley excluia su pago a los herederos. Las bases interpretativas en que se fundó el tribunal son insostenibles, conforme explicamos a continuación.

## III

La disposición de ley en que se basó el tribunal para denegar el pago a los herederos apelantes de la licencia por enfermedad acumulada, según previamente transcrita, provee para el pago a los beneficiarios de la suma cuyo pago correspondiera al empleado por concepto de licencia de vacaciones acumuladas a la fecha de su separación por muerte. ■

El tribunal apelado reconoció en su sentencia que el Tribunal Supremo no se había manifestado sobre el pago de la licencia por enfermedad a los beneficiarios. Resolvió, aludiendo por un lado a los principios de interpretación de una ley dudosa y por otro, a la claridad del lenguaje del artículo 2 de la Ley Núm. 125, que el legislador exceptuó el pago de la licencia por enfermedad a los herederos. Su interpretación de ley está errada. La disposición en cuestión provee para el pago a los herederos de la licencia acumulada por vacaciones, pero no contiene lenguaje excluyente alguno. Tampoco puede imputarse esa intención al legislador, como explicamos más adelante.

Las normas de interpretación de una ley, lo que se conoce como reglas de hermenéutica legal, no son dogmas estáticos ni absolutos. Por el contrario resultan de gran utilidad en la misión principal de los tribunales, que es hacer justicia. Para una explicación detallada de las reglas de hermenéutica, sus bases legales y jurisprudenciales y su aplicación en casos específicos, véase E. Bernier y J. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico,* **Publicaciones J.T.S.,** 1987, págs. 245-274.

Al aplicar los reconocidos principios de hermenéutica sobre claridad en el lenguaje y lenguaje dudoso a la disposición expresa sobre pago de licencia de vacaciones a los herederos, es claro que el legislador dispuso ese pago y es claro que nada dijo sobre el que tratamos.

El principio de interpretación fundamental al desempeño de la función judicial es aquel que preceptúa que cuando no hay ley aplicable al caso, el tribunal resolverá conforme a la equidad. Artículo 7 del Código Civil, 31 L.P.R.A. sec. 7. Podría arguirse que en nuestro caso hay ley, que dispuso sólo para el pago a los herederos de un tipo de licencia, y que por tanto, aplicaría la regla de interpretación de que la mención específica de una cosa implica la exclusión de otra. Pero es principio reconocido que esa regla debe aplicarse cuidadosamente, porque no es de aplicación universal, no es absoluta y no impide que se ausculte la intención legislativa R. E. Bernier y J. Cuevas Segarra, *ob. cit.,* págs. 345-346. Tampoco nos impide esa regla el ejercer nuestro deber interpretativo cuando hay ausencia de norma específica e indagar en las circunstancias existentes al aprobar la ley, examinar la naturaleza del derecho de que se trata y armonizar y coordinar con otras disposiciones estatutarias y jurisprudenciales. En otras palabras, al adjudicar intención al legislador por omisión, es deber de los tribunales cerciorarnos de que esa intención está fundamentada, pues de lo contrario, podríamos desvirtuar los verdaderos propósitos de la ley, así como su fin primordial, que es hacer justicia.

## IV

El desarrollo legislativo y jurisprudencial del derecho al disfrute de la licencia por enfermedad por el empleado público revela cambios significativos.

La Ley Núm. 125, *supra,* cuando fue aprobada en 1967 lo fue con el propósito de autorizar el pago de una suma global en compensación por la licencia de vacaciones acumulada por los empleados públicos que se separaran del servicio por cualquier causa que no fuere la muerte, la destitución o el abandono del servicio. El Informe de la Comisión de Gobierno de la Cámara de Representantes que consideró la medida, fundamentó su propósito en la necesidad de cubrir el puesto vacante sin esperar a que el empleado agotara las vacaciones acumuladas. Informe de 25 de abril de 1966, P. de la C. 567.

En 1968, se enmendó la Ley Núm. 125 por la Ley Núm. 92 de 19 de junio de 1968, para eliminar la muerte como causa de separación que excluia el pago de la licencia acumulada por vacaciones, según lo contemplaba el artículo 2. ■ Fue la Ley Núm. 92 del 1968 la que introdujo la cláusula

correctiva de la limitación del pago de licencia por vacaciones por motivo de muerte, y en el Informe de la Comisión de Gobierno de la Cámara de Representantes que recomendó la medida, se expresó específicamente lo siguiente:

*"La intención de la Ley 125 de 1967 fue reconocer como un derecho y como parte de la compensación del empleado el pago equivalente a las vacaciones que éste tuviera acumuladas a la separación del servicio. Por lo tanto, su muerte no debe constituir una prescripción de ese derecho. Las enmiendas propuestas tienen el fin de corregir la situación apuntada y proponen que en caso de muerte del funcionario o empleado, se pagará a sus herederos la suma que hubiere correspondido a éste por razón de la licencia de vacaciones no utilizada."*

Informe de 21 de mayo de 1968, P. del S. 710.

En 1972, se enmendó nuevamente el artículo 2 de la Ley Núm. 125, mediante la Ley Núm. 37 de 25 de mayo de 1972, para eliminar las causales de destitución y abandono del servicio como impedimentos para recibir el pago global de la licencia de vacaciones. Es mediante esta enmienda que se provee por primera vez para el pago de la suma global acumulada en concepto de licencia por enfermedad hasta un máximo de noventa (90) días, además de licencia por vacaciones, pero únicamente si la separación del servicio era para acogerse a una pensión por retiro por edad o por incapacidad. Contrario a la Ley Núm. 125, según inicialmente aprobada, no se incluyó por el legislador la muerte como causal excluyente del pago de la licencia por enfermedad. Su propósito se presentó de la siguiente manera:

*"El propósito de esta propuesta es proveer un incentivo para inducir a los empleados públicos a un mejor uso de la licencia por enfermedad para evitar la práctica señalada y, por otra parte, añadiría un beneficio marginal adicional lo cual es un incentivo para atraer y retener personal idóneo al servicio de carrera Pública."*

Informe de la Comisión de Gobierno de la Cámara de Representantes, de 29 de marzo de 1972, P. de la C. 1584.

La referida Ley Núm. 37 incorporó otras enmiendas a la Ley Núm. 125, las que se describieron en el aludido Informe como *"un paso de avance en el cuadro general de las tendencias modernas de administración pública."*

Posteriormente, mediante la Ley Núm. 198 de 23 de julio de 1974 el legislador acogió la recomendación de la Oficina de Personal del Servicio Público de aclarar que al disponer en el artículo 2 de la Ley Núm. 125 el pago de licencia por enfermedad acumulada a aquellos que se acogieron *"al retiro por edad o por incapacidad"* no se tuvo la intención de excluir a ningún empleado por razón de índole de su jubilación. El Secretario de Justicia había interpretado, a la luz del historial legislativo, que aun cuando la ley tuviere ese lenguaje específico, los empleados que se acogieran a pensión de méritos por años de servicios, también tenían derecho al pago global por la licencia por enfermedad. Memorial Explicativo de la Oficina de Personal de 12 de noviembre de 1973, en torno al P. del S. 719. Las enmiendas dispuestas incorporaron el término amplio de *"jubilación"*, lo que evitaba interpretaciones restrictivas del lenguaje específico anterior.

También la enmienda de 1974 extendió el pago global de licencia por enfermedad a las personas no participantes del retiro gubernamental que se separan definitivamente del servicio, siempre que hayan prestado por lo menos diez (10) años de servicio público. En los Informes de la Comisiones de Gobierno de la Cámara y del Senado se catalogó la medida como una de *"justicia para los empleados públicos"*. Respectivamente, Informes de 24 de junio y 19 de junio de 1974. Tampoco en esta medida se limitó el pago de la licencia por enfermedad cuando mediara la muerte, como se limitó inicialmente por ley en cuanto al pago de vacaciones.

Del historial legislativo no puede colegirse intención legislativa alguna de excluir el pago de licencia acumulada por enfermedad en caso de muerte al interpretar el último párrafo del artículo 2 de la Ley Núm. 125. Por otro lado, sí puede interpretarse que la incorporación específica de la disposición sobre el pago de licencia acumulada por vacaciones en el artículo 2, *supra*, a los herederos

en caso de muerte según lo dispuso la Ley Núm. 92 de 1968, obedeció al hecho de que al aprobarse originalmente la Ley Núm. 125 se excluyó el pago por el concepto de licencia por vacaciones en casos de muerte.

Conforme el historial legislativo antes referido, el legislador tuvo como fin corregir esa situación y para ello enfatizó, al eliminar la restricción, que el pago de esa licencia se efectuaría a los herederos. Al no haber existido esa limitación por ley en el caso del pago de licencia por enfermedad, no había motivo para expresamente reconocer el derecho o corregir situación alguna.

Por otra parte, tampoco hemos encontrado base para la intención legislativa que se aplicó en este caso en contra de la reclamación de los herederos. Por el contrario, en legislación específica posterior que, distinto a la Ley Núm. 125, se redactó y aprobó de manera integral, como fue la Ley de Municipios Autónomos de 1991, el legislador ha reconocido expresamente el pago a los herederos de las licencias acumuladas por enfermedad y vacaciones en caso de muerte del empleado municipal. Ley Núm. 81 de 30 de agosto de 1991, art. 12.020, 21 L.P.R.A. sec. 4570. Por tanto, el legislador reconoció en esa legislación el carácter de transmisibilidad de ese derecho, lo que elimina cualquier interpretación de su intención de catalogarlo como intransmisible por ser de carácter personal.

Es por lo anterior que entendemos que no existe impedimento alguno para que apliquemos los principios sucesorios al derecho adquirido por el causante en este caso, independientemente de que el artículo 2 no contenga un lenguaje específico reconociendo dicha transmisibilidad.

En definitiva, la exclusión que el tribunal de instancia encontró en el lenguaje del artículo 2 de la Ley Núm. 125, bajo el fundamento de que el lenguaje se refiere únicamente al pago a los herederos de la licencia por vacaciones acumuladas a la muerte del empleado, no encuentra apoyo en el historial legislativo, ni en las reglas de interpretación. El legislador nunca contempló la muerte como causal excluyente del pago de licencia por enfermedad acumulada, como lo había dispuesto para el pago de la licencia por vacaciones acumuladas. El motivo del lenguaje aclaratorio sobre el pago a herederos que hoy está vigente no puede utilizarse, pues, en contra del servidor público y sus herederos. Tampoco debe utilizarse en su contra el que el legislador en una ley especial adoptada integralmente en 1991 para empleados municipales haya hecho expresión específica del pago de licencia por enfermedad a los herederos, porque en lugar de ser un acto limitativo, denota que reconoció el carácter de transmisibilidad del derecho que tratamos.

Además, la interpretación adversa aquí cuestionada va en contra de la corriente interpretativa jurisprudencial en legislaciones que benefician a empleados públicos. El Tribunal Supremo de Puerto Rico ha interpretado liberalmente el pago de licencias por enfermedad acumuladas, según dispuesto en el artículo 2 de la Ley Núm. 125, a favor del empleado, a tenor con su consistente trayectoria jurisprudencial cuando las leyes tratan sobre derechos de los trabajadores. Véase listado de jurisprudencia a esos efectos, así como explicación del Tribunal Supremo sobre la forma y el alcance de interpretar estatutos de carácter reparador o remedial en *Muñoz Hernández v. Policía,* **93 J.T.S. 137,** pág. 11200, 134 D.P.R. ___ (1993).

Así, al reconocer que procedía el pago de la licencia por enfermedad acumulada a la persona que cumple los requisitos de ley y se acoge a una pensión gubernamental diferida, por entender que ello cae bajo el concepto de *"para acogerse a la jubilación"* del artículo 2 de la Ley Núm. 125, razonó:

*"Ahora bien, la evolución e historial legislativo de este Artículo de la ley y sus enmiendas demuestran su carácter reparador y su propósito de proteger los derechos adquiridos por los servidores públicos así como de estimular a aquel servidor público que por servirle a su país se ha visto imposibilitado del disfrute de sus vacaciones regulares y de su licencia por enfermedad acumulada. Por ello debemos interpretarlo liberalmente, a favor del empleado, puesto que dicha ley concede una serie de derechos en pro del reclutamiento y retención de tales servidores públicos con el fin del fortalecimiento mismo del servicio público". Caballero Meléndez v. Sistema de Retiro etc.,* **91 J.T.S. 71,** a la pág. 8814; 129 D.P.R. ___ (1991).∎

Conviene aquí señalar que el Tribunal Supremo, en el caso de *Caballero Meléndez v. Sistema de Retiro, supra,* formuló varios cuestionamientos que surgirían de interpretarse la Ley Núm. 125 en

contra del pago global de la licencia por enfermedad al momento de acogerse el empleado público a la pensión diferida, asunto bajo su consideración en ese caso. Al indicar que esa interpretación en su contra podría propiciar que el empleado prefiera agotar la licencia por enfermedad durante el servicio, contrario a lo que quiso evitar la ley, planteó como asuntos cuestionables si *"¿Es un derecho (el pago global a licencia por enfermedad) transferible a sus herederos?"* Pág. 8877. Por tanto, reconoció que era un asunto a ser interpretado y decidido en algún momento.

Como previamente apuntado, este Tribunal no encuentra impedimento alguno, ni en la ley que consideramos, ni en su historial legislativo, ni en las normas de interpretación, para contestar esa interrogante a favor del empleado público fallecido y de sus herederos.

## V

Nos resta analizar la naturaleza del derecho en cuestión, a los fines de determinar su carácter de transmisibilidad bajo los principios de derecho sucesorio.

Si bien originalmente el derecho al disfrute de la licencia por enfermedad se concebía sólo como una protección al empleado público, una seguridad para la eventualidad de quebrantos en su salud, legislativamente se ha ido ampliando y modificando ese enfoque. Como señalamos antes, se ha convertido en un beneficio marginal adicional, un incentivo de reclutamiento y retención del servidor público. *Caballero Meléndez v. Sistema de Retiro, supra*, págs. 8874.

En legislación reciente, Ley Núm. 156 de 20 de agosto de 1996, se reafirma el interés del legislador en que el empleado público no pierda el exceso de licencias por vacaciones y enfermedad acumuladas y no disfrutadas y en premiar al empleado público que utiliza las licencias por concepto de vacaciones y enfermedad en una forma prudente y razonable. Exposición de Motivos, Ley Núm. 156. A esos fines, esa ley dispone para el derecho del empleado a que se le pague en efectivo anualmente el exceso acumulado por sobre lo permitido por ley en concepto de ambas licencias.

Esa trayectoria legislativa sobre la naturaleza del derecho derrota la determinación del tribunal apelado, a los efectos de que la licencia por enfermedad *"es un derecho subordinado a la enfermedad del funcionario", con el fin de "recuperarse de una enfermedad sobrevenida", y, por lo tanto, como no se beneficia el empleado de esa licencia al morir," el legislador entendió que no debía otorgarle a sus herederos los beneficios acumulados en dicho concepto".* Apéndice del recurso, págs. 67-68. El tribunal erró al formular esa concepción del derecho de licencia por enfermedad.

Dispone nuestro Código Civil que la propiedad y los demás derechos sobre los bienes se adquieren, entre otros, por título hereditario. Artículo 549, 31 L.P.R.A. sec. 1931. El derecho al pago de la licencia por enfermedad del empleado público no es de carácter personalísimo, como demuestra su desarrollo legislativo, sino que es un derecho patrimonial. Por tanto, está sujeto a ser transmitido a los herederos. Sabido es que la regla general en nuestro derecho sucesorio es la transmisibilidad de todos los elementos integrantes del patrimonio de la persona fallecida. Esto es, la posición jurídica que ocupaba el causante se mantendrá, colocando en su lugar a sus herederos. Artículos 599 y ss. del Código Civil, 31 L.P.R.A. secs. 2081 y ss.; *Feliciano Suárez, Ex parte*, 117 D.P.R. 402 (1986).

En conclusión, el tribunal erró en el caso que consideramos no sólo al encontrar en la ley una intención excluyente del legislador, sino al implicar que se trataba de un derecho que por su naturaleza personal sólo le correspondía al empleado público y no a su sucesión. El desarrollo legislativo del derecho al disfrute de la licencia por enfermedad, así como las normas del derecho sucesorio, derrotan esas posiciones.

## VI

Debido a que hemos determinado que erró el tribunal apelado al interpretar la ley en contra del fenecido licenciado Alvarez Crespo y de sus herederos, no es necesario entrar en los planteamientos específicos de estos últimos sobre enriquecimiento injusto, y trato injustificado, inequitativo, y clasificación irrazonable, contrario a principios constitucionales. Sabido es que al fallar conforme la equidad, en alguna medida tomamos en cuenta los señalamientos de los apelantes. Pero es claro que la dilucidación de las consideraciones constitucionales de una ley y de su aplicación son innecesarias, si el tribunal puede resolver por otros motivos. En este caso, no hemos encontrado base para una

intención legislativa que impida el reconocimiento de un derecho remedial a la sucesión de un servidor público y sí fundamentos para hacer una interpretación que sea justa. Bástenos señalar, no obstante, que de haber habido base para la intención legislativa excluyente que determinó el tribunal apelado, esos planteamientos de los apelantes podrían ser meritorios. Téngase presente que aparte del reconocimiento por ley a los herederos de los empleados municipales del pago de licencia por enfermedad, los sucesores de los empleados de la rama judicial, incluyendo los de los jueces, tienen también ese derecho. Regla 19 del Reglamento para la Administración del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XIII.

## VII

En conclusión, no hay impedimento legal o interpretativo que limite al tribunal en conceder lo solicitado por los herederos. El licenciado Alvarez Crespo cumplía con los requisitos del artículo 2 de la Ley Núm. 125 para ser acreedor al pago de la licencia por enfermedad que tenía acumulada a la fecha de su muerte. Su separación definitiva fue provocada por su fallecimiento, lo que le impidió disfrutar de los beneficios futuros del retiro gubernamental, dejando de ser participante, y habiendo prestado más de diez (10) años de servicio público. Sus herederos tienen derecho a sus bienes patrimoniales, incluyendo el derecho adquirido de la compensación por licencia de enfermedad acumulada, beneficio marginal de carácter económico. Una interpretación en contrario se aparta de las reglas de interpretación legal, jurisprudencial y de la trayectoria legislativa en reconocimiento de los derechos y beneficios de los empleados públicos.

Es pertinente señalar que como la función revisora de este Tribunal se limita a la adjudicación de controversias específicas, sería conveniente que el Tribunal Supremo tuviera la oportunidad de expresarse sobre la cuestión aquí planteada.

## VIII

En virtud de todo lo anterior, se revoca la sentencia apelada, se declara con lugar la demanda de sentencia declaratoria por los fundamentos aquí expuestos y se ordena al Departamento de Justicia al pago a los herederos del licenciado Alvarez Crespo del monto correspondiente a éste por concepto de la licencia por enfermedad acumulada a la fecha de su muerte.

El juez Miranda De Hostos disiente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 208

1. Téngase en cuenta que la orden ejecutiva de 1989, que luego se modificó para excluir a los fiscales, se adoptó estando vigente el mismo lenguaje del artículo 2 que el tribunal determinó en este caso excluia el pago de la licencia por enfermedad a los herederos de los fiscales. En otras palabras, administrativamente se reconocía ese pago en 1989.

Bajo el vigente Boletín Administrativo Núm. O.E.-1994-19 de 7 de abril de 1994 el Gobernador toma en cuenta para el monto de la compensación a los funcionarios nombrados por él, excepto los fiscales, entre otros factores, la licencia de vacaciones acumuladas, la naturaleza del servicio, y dicho monto puede ascender hasta el equivalente a seis (6) meses de sueldo. Según su segundo Por Cuanto su propósito en conceder esta compensación es que *"de ordinario estos funcionarios no acumulan licencias de vacaciones ni por enfermedad"*, contrario a la situación de los fiscales que sí acumulan ambas.

2. Exposición de Motivos de la Ley Núm. 40 de 13 de diciembre de 1990, enmendatoria de la Ley Núm. 141 de 30 de junio de 1966, Leyes de Puerto Rico, Equity, 1990, Parte 2, págs. 1547-1550.

3. Art. 2 de la Ley Núm. 125, último párrafo, *supra*.

**4.** Por otra parte, en el artículo 3 sobre la compensación global a funcionarios nombrados por el Gobernador, se introdujo la facultad de reglamentación de éste para pagar dicha compensación a los herederos en casos de muerte.

**5.** Véase que validó en esa ocasión el ejercicio interpretativo de rechazar exclusiones cuando el historial legislativo demuestra que esa no fue la intención del legislador, no empece el lenguaje específico que se utiliza en la ley.

**6.** Lo resuelto en este caso fue reiterado en *Centeno Cruz, et als. v. Rivera Cruz,* **91 J.T.S. 72,** pág. 8879, 129 D.P.R. ___ (1991).

---

## VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. MIRANDA DE HOSTOS — 98 DTA 208

San Juan, Puerto Rico, a 17 de agosto de 1998

Disiento. La controversia a dilucidar conforme lo reconoce la mayoría se limita a si los herederos del Fiscal Auxiliar del Tribunal Superior, Gilberto Alvarez Crespo, (Q.E.P.D.) tienen derecho al pago de la suma acumulada por éste en concepto de licencia por enfermedad.

Concluimos, contrario al voto mayoritario, que no tienen derecho a dicho pago, por los siguientes fundamentos.

### Principio de Interpretación de las Leyes

Nuestro ordenamiento legal dispone como principio general que, *"[c]uando una ley es clara y libre de toda ambiguedad, la letra de ella no debe ser menospreciada bajo pretexto de cumplir su espíritu."* Art. 14, Código Civil; 31 L.P.R.A. sec. 14.

Bajo dicho axioma, el Tribunal Supremo ha reconocido que la rama judicial no puede suplir la acción del poder legislativo o imponer condiciones que la ley no tiene. *Ríos Colón v. F.S.E.,* opinión de 11 de octubre de 1995, **95 J.T.S. 133,** pág. 140.

El poder judicial es un intérprete de la ley, no su creador; ante un lenguaje inequívoco se requiere la aplicación de la voluntad legislativa. *Clínica Juliá v. Secretario de Hacienda,* 76 D.P.R. 509, 521 (1954).

Aunque las leyes relacionadas con beneficios para los empleados, en circunstancias en que no sean claras o sean ambiguas, deben interpretarse liberalmente a favor de éstos, la rama judicial no está autorizada a *"[s]ubvertir el diseño básico del estatuto ampliando beneficios a áreas y situaciones no contempladas originalmente; máxime desconociendo el impacto económico que conllevaría...".* Dentro de nuestro sistema de separación de poderes, le compete a la Asamblea Legislativa, el considerar el impacto social y económico y determinar la política pública correspondiente. *Torres García v. F.S.E.,* 111 D.P.R. 474, 469 (1981); *David Noriega Rodríguez v. Rafael Hernández Colón,* opinión de 18 de marzo de 1994, **94 J.T.S. 35,** pág. 11638.

Cónsono a tales principios de hermenéutica, analicemos la disposición aplicable a esta controversia, el Art. 2 de la Ley Núm. 125 de 10 de junio de 1967, según enmendada; 3 L.P.R.A. sec. 703(a), que prescribe:

*"Si la separación del servicio fuere motivado por la muerte del funcionario o empleado, se les pagará a sus beneficiarios la suma que hubiere correspondido a éste, por razón de la licencia de vacaciones no utilizada, conforme se dispone en esta sección."*

De la lectura de la mencionada disposición podemos concluir, -al igual que la mayoría en su sentencia- que se trata de un texto claro, que no presenta ambiguedad alguna, en la cual el legislador

autorizó en caso de muerte, el pago a los beneficiarios por razón de licencia de vacaciones no utilizada.

Ante tales circunstancias, el concluir que debe analizarse la intención de la ley para determinar si el beneficio se extiende a la licencia por enfermedad, aun cuando ésta es clara, es contraria a la norma interpretativa antes mencionada. No obstante, aun analizando el historial legislativo de la ley, de éste no surge que hubiera la intención de incluir el pago acumulado de las licencias por enfermedad.

Cuando se realizó la enmienda a la Ley Núm. 125, *supra*, por la Ley Núm. 92 de 19 de junio de 1968, para conceder los derechos del pago de licencia de vacaciones en caso de muerte, no hubo expresión legislativa alguna ni en la Cámara ni en el Senado, de incluir el pago de licencia por enfermedad. Del tracto legislativo lo que surge es que la enmienda iba dirigida a reconocer exclusivamente tal derecho sobre las licencias de vacaciones acumuladas del funcionario al momento de su muerte, pero no sobre las licencias de enfermedad.

De otra parte, cuando se enmienda la Ley Núm. 141 de 30 de junio de 1966, mediante la Ley Núm. 40 de 13 de diciembre de 1990, a los fines de determinar los pagos de los fiscales al separarse del servicio, el legislador que conocía los alcances de la Ley Núm. 125, *supra*, no incluyó el pago de las licencias de enfermedad acumuladas, en caso de muerte. 3 L.P.R.A. sec. 133b-2. Esta última expresión del legislador en el 1990, es representativa, en caso de analizar la Ley Núm. 125, *supra*, bajo los principios de hermenéutica, de que dichos pagos no fueron incluidos por el legislador, ni había intención al respecto.

Por lo tanto, concluimos: primero, que la ley es clara y libre de ambiguedad, por lo cual no es necesario acudir al análisis sobre la intención legislativa para conocer sus propósitos; y segundo, que aun bajo los principios de hermenéutica, la intención legislativa no sostiene que se incluyan los pagos a los beneficiarios de las licencias de enfermedad acumuladas en caso de muerte.

## II
## Interpretaciones de Otras Leyes y de Dictámenes Administrativos

En relación al análisis de hermenéutica de la mayoría, con otras disposiciones similares, *in pari materia* o complementarias, es necesario expresar que este sólo procede si la ley es ambigua o tiene lagunas que deben ser subsanadas. Art. 18, Código Civil; 31 L.P.R.A. sec. 18; *Asoc. de Doctores v. Dra. Ivette Morales,* opinión de 1ro. de febrero de 1993, **93 J.T.S. 12**, pág. 10341; *Beauchamp v. Holsum Bakers of P. R.*, 116 D.P.R. 522, 526-527 (1985). Veamos.

### -A-
El análisis de la mayoría discutiendo de una parte el Art. 12.020 de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4570, la cual expresa categóricamente que los herederos de los empleados municipales tienen derecho al pago de licencias de enfermedad acumulda en caso de muerte; y la Ley Núm. 156 de 20 de agosto de 1996, que autoriza el pago en exceso de licencia de enfermedad y vacaciones acumuladas, entendemos respetuosamente que es contrario a la norma vigente.

Aun si concluimos que la Ley Núm. 125, *supra*, no es clara y requiere de tal análisis interpretativo para llenar lagunas, el resultado sería distinto, pues ambos estatutos fueron aprobados en fecha posterior, lo cual sustenta que el legislador conocía de los alcances de la Ley Núm. 125, *supra*, y no la enmendó para incluir tales beneficios. Además, por propia definición, la Ley Núm. 125, *supra*, no tiene laguna o ambiguedad que requiera el complementarla con otra disposición legal sobre una materia relacionada. La expresión inequívoca de la ley, no requiere de otros medios para su interpretación.

Por lo tanto, concluimos que no procedía el análisis realizado para sustentar el fundamento.

### -B-
Respecto a que las Ordenes Ejecutivas, Boletín Administrativo, Núm. 5288-A de 22 de febrero de 1989, reconocía el tomar en cuenta al fijar la compensación final de los fiscales y de sus herederos la

licencia por enfermedad acumuladas, basta señalar, que la concesión de tal beneficio, cuando estaba vigente, era a los funcionarios que de ordinario no acumulaban licencia de vacaciones y de enfermedad porque estaban asignados a un departamento ejecutivo bajo supervisión de un funcionario nombrado por el Gobernador, por lo cual, no puede colegirse que la intención legislativa en la esfera administrativa era la de conceder tal derecho a aquellos empleados que por no tener tales designaciones, sí acumulaban las mismas por disposición de ley.

Los principios antes discutidos también aplican al fundamento de la mayoría, respecto a los empleados en la rama judicial a los cuales se le conceden tales derechos, expresamente por reglamento.

Concluimos, por los fundamentos esbozados, que el análisis *in pari materia* de la mayoría, de una ley clara, no procede y que éste se utiliza exclusivamente en caso de que ésta sea ambigua o tenga lagunas. La Ley Núm. 125, *supra,* no tiene tales defectos, que den lugar a recurrir a una interpretación con otras leyes complementarias.

### III
### Sobre los Principios de Derecho Sucesorio

Siguiendo el análisis antes pautado, entendemos que es innecesario el considerar los principios de derecho sucesorio, dado que el legislador no dispuso sobre el derecho de los herederos a los pagos acumulados de licencia de enfermedad, por lo cual los mismos no son transmisibles. De hecho, conforme lo concluyó el foro de instancia, se reconoce que la licencia por enfermedad es un derecho subordinado a dicha condición, tanto es así, que las legislaciones que citan la mayoría sustentan que su propósito es el servir de protección a los empleados en casos de problemas de salud.

No surge de dichas leyes cambio alguno sobre la política pública, por lo cual no puede concluirse que ésta ha variado, a los fines de sustentar otra posición.

### IV
### Sobre el Enriquecimiento Injusto y la Igual Protección de las Leyes

En cuanto al error que se señala por los apelantes, sobre la aplicación de la doctrina de enriquecimiento injusto, nos limitamos a señalar que ésta no procede cuando existe una ley y política pública que reglamenta el asunto, como en el presente caso. *Plan Bienestar Salud v. Alcalde Cabo Rojo,* 114 D.P.R. 697, 702 (1983).

Referente al señalamiento de la aplicabilidad de los principios constitucionales de igual protección de las leyes, por ser ésta una legislación socio-económica, se presume constitucional y le corresponde al que la impugna el demostrar que es arbitraria y no existe nexo racional e interés legítimo del Estado. En ausencia de dicha prueba de los apelantes, su validez no ha quedado impugnada. *Disidente Universal de P.R. v. Dept. de Estado,* opinión de 12 de junio de 1998, **98 J.T.S. 68,** pág. 1010. (Casos citados).

### V

Por los fundamentos antes expuestos, disiento respetuosamente del voto mayoritario, por lo cual confirmaría la sentencia apelada, por ser ésta correcta en derecho.

**JOSÉ L. MIRANDA DE HOSTOS**
**Juez de Apelaciones**